# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
Filed: May 7, 2020

| | | |
|---|---|---|
| * * * * * * * * * * | * | UNPUBLISHED |
| KATHERINE DOHERTY, | * | |
| | * | No. 15-1429V |
| Petitioner, | * | |
| v. | * | Special Master Gowen |
| | * | |
| SECRETARY OF HEALTH | * | Interim Attorneys' Fees and Costs; |
| AND HUMAN SERVICES, | * | Non-Compensable Legal Research; |
| | * | Paralegal Tasks; Reduction of Expert |
| Respondent. | * | Costs. |
| * * * * * * * * * * | * | |

*Joseph L. Doherty, Jr.*, The Doherty Law Firm, Woburn, MA, for petitioner.
*Althea C. Davis*, U.S. Department of Justice, Washington, D.C., for respondent.

## DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]

On March 6, 2020, Katherine Doherty ("petitioner") filed a motion for interim attorneys' fees and costs, which is hereby **GRANTED.** Petitioner is awarded $117,294.17 in interim attorneys' fees and costs.

### I.   Procedural History

On November 25, 2015, petitioner, acting *pro se*, timely filed a petition in the National Vaccine Injury Compensation Program.[2] Petition (ECF No. 1). Petitioner alleged that as a result of receiving a tetanus-diphtheria-acellular pertussis ("Tdap") vaccination on June 11, 2012, she

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), **because this opinion contains a reasoned explanation for the action in this case, I intend to post it on the website of the United States Court of Federal Claims.** The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. Before the opinion is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). An objecting party must provide the court with a proposed redacted version of the opinion. *Id.* **If neither party files a motion for redaction within 14 days, the opinion will be posted on the court's website without any changes.** *Id.*

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) (Vaccine Act or the Act). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

suffered the sudden onset of optic nerve inflammation and peripheral retinal vasculitis on November 29, 2012.  Petitioner avers that she was later diagnosed with Behcet's disease.  *Id.* at Preamble.

On January 5, 2016, I held an initial status conference pursuant to Vaccine Rule 4(b). Petitioner Ms. Katherine Doherty appeared on her own behalf, accompanied by attorney Joseph L. Doherty, Jr.  Mr. Gordon Shemin, respondent's attorney of record, appeared on behalf of respondent.  I directed petitioner to file all medical records in support of her petition and a Statement of Completion by February 8, 2016.  Respondent's deadline to file the report pursuant to Vaccine Rule 4(c) was suspended.  Within thirty (30) days after petitioner filed a Statement of Completion, respondent would file a status report on whether the medical records were complete and whether this case would be appropriate for informal resolution or the litigation track.  I also discussed the importance of petitioner obtaining counsel to represent her in this matter, provided a list of attorneys with experience in the Vaccine Program, and directed petitioner to file a motion to substitute counsel or a status report on her progress by March 7, 2016.   Initial Order (ECF No. 8).

Subsequently in January 2016, petitioner was hospitalized for a blood vessel/ blockage malformation in her brain.  She filed several unopposed motions for extensions of time to obtain and file the medical records in support of her petition and a Statement of Completion, which were granted.  ECF Nos. 9-14.  On July 11, 2016, petitioner filed approximately 400 pages of medical records from numerous different providers.  ECF No. 15. That filing also included a "notice of appearance" of attorney Mr. Joseph Doherty, Jr., which was stricken because an attorney for a party other than the United States is required to file a Motion for Substitution of Counsel, pursuant to the Rules of the United States Court of Federal Claims, Rule 83.1(c)(4). ECF No. 16.  On August 4, 2016, petitioner correctly filed the Motion for Substitution of Counsel accompanied by Mr. Doherty's signed affidavit that petitioner "has asked that I represent her in this matter and that I be appointed as Counsel of record for all further matters relating to the case."  ECF No. 18.  The motion was granted and Mr. Doherty became listed as petitioner's attorney of record, the case was converted to electronic filing, and all further filings were served upon Mr. Doherty on behalf of petitioner.  ECF No. 19.

During a status conference on August 9, 2016, I struck the filed medical records for improper labeling[3], which petitioner was ordered to refile with a Statement of Completion by September 9, 2016.  Within 60 days thereafter, petitioner shall file an expert report addressing the legal standard for causation-in-fact set forth in *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005) as well as the appropriate onset of petitioner's alleged vaccine injury.  Order (ECF No. 20).

---

[3] Petitioner's medical records filed on July 11, 2016, were incorrectly labeled Exhibits A-O.  The Vaccine Program Guidelines provide that a petitioner's exhibits should be numbered, in contrast to respondent's exhibits which should be lettered.  *See* Guidelines for Practice Under the National Vaccine Injury Program, available at https://www.uscfc.uscourts.gov/vaccine-guidelines.

On September 9, 2016, petitioner refiled the initial set of medical records as Petitioner's Exhibits ("Pet. Exs.") 1-15. On October 28, 2016, petitioner filed additional medical records as Pet. Exs. 16-22, followed by a Statement of Completion (ECF No. 28). Petitioner was ordered to file an expert report by December 30, 2016. Petitioner filed several motions for extension of time to file an expert report, citing both difficulties in retaining an expert and her ongoing medical problems, which respondent did not oppose and I granted. ECF Nos. 29-32. On April 10, 2017, Ms. Lynn Riccardella entered her appearance as respondent's new attorney of record. ECF No. 33. Petitioner filed additional unopposed motions for extensions of time to file an expert report. ECF No. 34-36. On November 30, 2017, I convened a status conference during which I also directed petitioner to ensure that all exhibits were in compliance with the Vaccine Guidelines. The original petition was filed *pro se* and petitioner's counsel should prepare an Amended Petition providing the correct date of vaccination and detailing petitioner's medical history before and after the vaccination. If petitioner is alleging a significant aggravation claim in the alternative, that needs to be pled. Petitioner's counsel indicated that he had retained an expert neurologist with experience in the Vaccine Program, Lawrence Steinman, M.D., who had suggested also consulting with Joseph Rizzo, M.D. and/or another expert with expertise in neuro-ophthalmology. I ordered petitioner to file the amended petition and expert reports by February 1, 2018. Scheduling Order (ECF No. 37).[4]

On February 8, 2018, petitioner filed Dr. Steinman's expert report and curriculum vitae. Pet. Exs. 23-24. On February 15, 2018, petitioner filed an amended petition. ECF No. 48.

Subsequently petitioner filed motions for extensions of time to file additional reports from other medical treaters and/or experts. Respondent did not oppose the motions and I granted them. ECF Nos. 55-64. On August 3, 2018, petitioner filed the report of Halsey Settle, M.D. Pet. Ex. 71. On August 30, 2018, Ms. Althea C. Davis entered her appearance as respondent's new attorney of record. ECF No. 68. On August 31, 2018, petitioner filed the report of David Callanan, M.D. Pet. Ex. 73.

On September 5, 2018, I ordered respondent to file any responsive expert reports within 60 days, by November 5, 2018. On September 26, 2018, respondent filed an unopposed motion to amend the schedule. Respondent averred that he had identified outstanding records that were necessary to his and his expert's assessment of petitioner's claim. Respondent listed seventeen (17) requests for additional records. Respondent requested that petitioner address those records after which respondent would file a status report proposing a due date for his Rule 4(c) report and responsive expert reports. ECF No. 72. On September 28, 2018, I granted respondent's request to amend the schedule. I ordered petitioner to file the additional records, a response to the motion, and a supplemental statement of completion within 60 days, by November 27, 2018. ECF No. 73.

---

[4] During the status conference on November 30, 2017, I also noted that petitioner had not paid the filing fee. ECF No. 37 at 1. The filing fee was subsequently received. *See* Non-PDF entry on January 17, 2018.

Petitioner duly worked to address respondent's 17 numbered requests for additional records. Some of respondent's requests yielded additional records. Other requests were addressed via signed statements that the records had already been filed, did not exist, or were unavailable. *See generally* ECF Nos. 74-88. On February 12, 2019, petitioner filed a supplemental statement of completion. ECF No. 89.

On March 15, 2019, respondent filed a status report averring that there were additional outstanding records or that incomplete records have been provided in response to respondent's request. Respondent listed three (3) requests for additional records. ECF No. 90.

On April 17, 2019, I convened a status conference during which respondent's requests for additional records were discussed. Counsel agreed to work together to resolve these requests. I noted that petitioner had filed opinions in support of vaccine causation from her treating ophthalmologist Dr. Settle (at Pet. Ex. 71) and her treating retina specialist Dr. Callanan (at Pet. Ex. 73). She had also filed a supportive opinion from Dr. Steinman (at Pet. Ex. 23), who had strong qualifications and considerable experience in the Vaccine Program. However, I ordered petitioner to file a supplemental expert report from Dr. Steinman with citations to the medical records, confirming that petitioner only received a Tdap vaccine and not an MMR vaccine on the date at issue, and better describing how the Tdap vaccine can cause injury resulting in the onset of Behcet's disease with the first symptoms manifesting approximately six months thereafter. Scheduling Order (ECF No. 91). I ordered petitioner to complete these tasks by June 18, 2019 and for respondent to file the responsive expert reports and Rule 4(c) report within 60 days thereafter.

Petitioner filed several motions for extensions of time, which respondent did not object and I granted. On October 22, 2019, petitioner filed Dr. Steinman's supplemental expert report. Pet. Exs. 103-104. Additionally, between August – November 2019, petitioner filed additional medical records and statements addressing respondent's requests, *see* ECF Nos. 94-96, 99, 105, 107-108, 113-15. On November 25, 2019, petitioner filed a supplemental statement of completion. ECF No. 116.

On December 11, 2019, respondent's counsel emailed my law clerk (copying petitioner's counsel) requesting confirmation of the deadline for respondent to file the responsive expert reports and Rule 4(c) report. See Informal Communication. On December 19, 2019, I set respondent's deadline to file the responsive expert reports and Rule 4(c) report within 60 days, by February 18, 2020. Scheduling Order (ECF No. 117). On February 17, 2020, respondent filed a motion for extension of time (ECF No. 118), which petitioner did not oppose and I granted, thereby extending respondent's deadline to April 3, 2020.

On March 6, 2020, petitioner filed a motion for interim attorneys' fees and costs. Int. Fee App. (ECF No. 119). Petitioner requested $99,147.50 in attorneys' fees and $34,120.00 in attorneys' costs, totaling $133,267.50 in attorneys' fees and costs incurred to date. *Id.* at 1. Pursuant to General Order Number 9, petitioner provided a signed statement that although she incurred some initial costs for obtaining records in 2015 (while she was *pro se*), she did not keep any documentation of those costs and she is not seeking recovery of any fees or costs related to the prosecution of this Petition. *Id.* at 86.

On April 1, 2020, respondent filed a motion for leave to file out of time, attaching the response to the motion for interim attorneys' fees and costs. ECF No. 120. I granted the motion and accepted respondent's response out of time. Order (Non-PDF) entered April 3, 2020. In the response, respondent avers that "As a prerequisite for the Special Master exercising his discretion whether to award fees and costs in uncompensated cases like the current case, a petitioner first must establish that the petition was filed in good faith and with a reasonable basis." ECF No. 120-1 at 1. Respondent cites to the amended petition (ECF No. 48) and to Dr. Callanan's report in this case (Pet. Ex. 73), but not to the reports from Drs. Settle and Steinman. Petitioner has not filed a reply. This matter is now ripe for adjudication.

Of note, on April 2, 2020, respondent filed a motion for extension of time to file respondent's report pursuant to Vaccine Rule 4(c) and responsive expert reports, ECF No. 121, which petitioner did not oppose and I granted. Accordingly, respondent is ordered to file the responsive expert reports and Rule 4(c) report by June 26, 2020.

## II.   Entitlement to Attorneys' Fees and Costs

### A.  Legal Standard

The Vaccine Act provides that reasonable attorney's fees and costs "shall be awarded" for a petition that results in compensation. §15(e)(1)(A)-(B). Even when compensation is not awarded, reasonable attorneys' fees and costs "may" be awarded "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for which the claim was brought." § 15(e)(1). The Federal Circuit has reasoned that in formulating this standard, Congress intended "to ensure that vaccine injury claimants have readily available a competent bar to prosecute their claims." *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012).

Respondent avers that as a prerequisite for any award of attorneys' fees and costs for this case, which has not been compensated, I need to exercise my discretion and determine whether petitioner has established good faith and reasonable basis for the claim. Response (ECF No. 120-1).

Upon review, this case involves a complicated medical history both before and after the June 2012 Tdap vaccination, as reflected in the voluminous medical records filed to date. Petitioner's treating ophthalmologist since 2008, Dr. Halsey Settle, has submitted a report summarizing her history. Dr. Settle opines that "the sudden vision changes noted by [petitioner] in December 2012 were the first symptoms associated with the onset of Behcet's [disease], vasculitis, and uveitis." Dr. Settle opines that these conditions involved "vascular inflammation." They were "not caused by vitreous opacities" as initially considered. "More importantly, the Behcet's [disease], vasculitis, and uveitis were a new and independent problem and they were not caused by, or associated in any way with, [petitioner's] [prior] glaucoma or any of her other ophthalmological problems." Pet. Ex. 71.

Petitioner has also submitted an opinion from Dr. David Callanan, the retinal specialist who conducted an initial consult and formally diagnosed Behcet's syndrome in November 2013. Dr. Callanan opines that Behcet's "includes intraocular inflammation and retinal vasculitis" and that "the primary mechanism of damage is autoimmune." Dr. Callanan agrees with Dr. Settle's explanation of petitioner's "long and complex ophthalmologic history." Dr. Callanan opines that petitioner's prior ophthalmological problems including glaucoma did not in any way cause her Behcet's, uveitis, and vasculitis. The latter represented a "new condition" with a "distinctly different" mechanism of damage. Dr. Callanan also confirms that there is a "temporal relationship between the vaccination in June 2012, the onset of Behcet's at a sub-clinical/ non-symptomatic level during the months thereafter, and the first onset of actual symptoms with the loss of vision in December 2012." Pet. Ex. 73.

Petitioner has also retained Dr. Lawrence Steinman, who is board-certified in neurology and has extensive experience treating and researching various autoimmune conditions of the nervous system. Dr. Steinman concurs with the treating physicians, opines that the Tdap vaccine can cause Behcet's syndrome via several possible mechanisms, that it did so in petitioner's case, and that the temporal association is medically acceptable. Pet. Ex. 102.

In light of petitioner's filing of voluminous medical records, which necessitated the detailed review of two treating ophthalmologists and an expert experienced in the Vaccine Program, all of whom tend to support vaccine causation, I find that there was a reasonable basis to file the petition. That reasonable basis has continued to exist leading up to the filing of the motion for interim attorneys' fees and costs. The other lengthy proceedings in this case have centered on ensuring that the record is complete and compliant with the Vaccine Program's requirements. To date, neither respondent nor I have identified issues that would tend to diminish the finding of reasonable basis for this claim. That may occur in the future, when respondent completes his formal review of the case and consults with his own medical experts with comparable expertise. However, based on the filings to date and the lack of specific objection from respondent, I find that reasonable basis exists supporting an award of attorneys' fees and costs incurred up to this point.

## B. Interim Awards

The Vaccine Act permits interim attorneys' fees and costs. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008); *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372 (Fed. Cir. 2010). In *Shaw*, the Federal Circuit held that it was proper to grant an interim award when "the claimant establishes that the cost of litigation has imposed an undue hardship." 609 F.3d at 1375. In *Avera*, the Federal Circuit stated that "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." 515 F.3d at 1352. I do not routinely grant interim fee applications. I generally defer ruling on an interim fee application if: the case has been pending for less than 1.5 years (measured from the date of filing); the amount of fees requested is less than $30,000; and/ or the aggregate amount of expert costs is less than $15,000. I generally defer any award of interim attorneys' fees and costs until all of these thresholds are met or until an entitlement hearing has occurred. These are, however, only informal requirements, and there are ultimately many factors bearing on the merit of an interim fee application. I evaluate each one on its own merits.

Petitioner's counsel has been working on this case for over four years. The interim request is for well over $30,000 in attorneys' fees and more than $15,000 in attorneys' costs. These are associated with obtaining voluminous medical records and the reports of three medical professionals who have opined regarding petitioner's complex medical history and the likelihood of vaccine causation. Respondent's formal review and responsive expert reports are currently due by June 26, 2020. However the case proceeds after that point, an award of interim attorneys' fees and costs is appropriate at this time so that counsel is not unduly financially burdened by this protracted litigation.

## III. Reasonable Attorneys' Fees and Costs

### A. Legal Standard

As stated above, the Vaccine Act only authorizes "reasonable" attorneys' fees and costs. The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera*, 515 F.3d at 1349. Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347-58 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. *Id.* at 1348. Although not explicitly stated in the statute, the requirement that only reasonable amounts be awarded applies to costs as well as to fees. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994).

Special masters have "wide discretion in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991). They may look to their experience and judgment to reduce the number of hours billed to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). A line-by-line evaluation of the billing records is not required. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (1991), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993 (per curiam).

The petitioner "bea[rs] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable. *Wasson*, 24 Cl. Ct. at 484. Adequate proof of the claimed fees and costs should be presented when the motion is filed. *Id.* at 484, n. 1. Counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

### B. Hourly Rates

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed.

Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).  There is a "limited exception" that provides for attorney's fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate.  *Id.*  This is known as the *Davis County* exception.  *See Hall v. Sec'y of Health & Human Servs.,* 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, the interim fee decision in *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based upon an individual's experience.  *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *motion for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015).  The Court has since updated the *McCulloch* rates.  The Attorneys Forum Hourly Rate Fee Schedules for 2015 – 2020 are made available on the Court's website.[5]

Petitioner's counsel Joseph L. Doherty, Jr., practices law in Woburn, a town approximately twenty (20) miles outside of Boston, Massachusetts.  Attorneys in the Boston metropolitan area have consistently been found entitled to forum rates in the Vaccine Program.  *See, e.g.*, *McCulloch*, 2015 WL 5634323 (awarding forum rates to the firm of Conway Homer, P.C.).  I find that Mr. Doherty is also entitled to forum rates.

The next step is to determine reasonable hourly rates for Mr. Doherty.  He has been licensed to practice law in the state of Massachusetts since 1978.  He has also been admitted to practice before several courts including the United States Court of Federal Claims since 2002.[6]  This is his first case in the Vaccine Program.  Mr. Doherty avers that his legal practice is focused primarily on medical malpractice as well as products liability and other serious personal injury matters.  From the late 1980s through 2004, he represented Massachusetts General Hospital and its affiliated doctors in multiple complex neuro-radiation cases.  He also handled numerous cases involving chemotherapy, oncology, infectious disease, and autoimmune disorders.  In approximately 2003 – 2004, he shifted his practice from representing defendants to plaintiffs.  Mr. Doherty avers, citing *McCulloch*, that his experience handling complex personal injury, medical malpractice, and product liability actions is relevant and applicable to practicing in the Vaccine Program.  Int. Fee App., Attachment 2 at 2.[7,8]  In recognition of this being his first case

---

[5] United States Court of Federal Claims – OSM Attorneys' Forum Hourly Rate Fee Schedules, available at http://www.cofc.uscourts.gov/node/2914 (last accessed on May 7, 2020).

[6] After gaining admission to this court's bar, Mr. Doherty served as attorney of record for Massachusetts General Hospital in several matters which have since resolved.  *See Massachusetts Institute of Technology et al. v. United States*, 75 Fed. Cl. 129 (Jan. 26, 2007); *Sweet et al. v. United States*, 63 Fed. Cl. 591 (Jan. 11, 2005); *Sweet et al. v. United States*, 53 Fed. Cl. 208 (Aug. 7, 2002).

[7] *See also The Doherty Law Firm*, https://www.dohertylaw.com/ (last accessed May 5, 2020); *Massachusetts Board of Bar Overseers – Look Up An Attorney – Joseph L. Doherty, Jr.*, https://www.massbbo.org/AttorneyLookup?firstName=jose&lastName=doher (last accessed May 5, 2020) (confirming that he was admitted in 1978 and his status is active).

[8] As an additional matter, I will note that Mr. Doherty is the father-in-law of petitioner Katherine Doherty.  Special masters including myself have declined to award attorneys' fees and costs to either petitioners or petitioners' family

in the Vaccine Program, he requests hourly rates of $410 in 2016, $415 in 2017, and $425 in both 2018 – 2019.  Int. Fee App., Attachment 2 at 4.  Mr. Doherty requests these rates upon consideration of the OSM Forum Rate Charts for the relevant years, specifically to the ranges provided for attorneys such as Mr. Doherty with 31+ years of experience.  Mr. Doherty also requests that his paralegal Brenda Rice receive an hourly rate of $125 for 2016 - 2019.  Upon consideration, I find that the requested rates are reasonable and should be awarded.

### C. Hours Expended

As previously noted, a line-by-line evaluation of the fee application is not required and will not be performed.  *Wasson*, 24 Cl. Ct. at 484.  Rather, I may rely on my experience to evaluate the reasonableness of hours expended.  *Id.*  Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests …. [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications."  *Saxton*, 3 F.3d at 1521.

Petitioner requests compensation for 234.6 hours expended on this case by counsel and one paralegal from 2016 to December 19, 2019.  Int. Fee App. at 25.  The billing entries are sufficiently detailed to be evaluated.  Counsel appropriately recorded but did not bill for filings that were stricken for procedural issues.  Int. Fee App., Attachment 3 at 3, 9-10, 13.  The majority of the entries are reasonable, however, a few require adjustment.

First, it is well-established that counsel cannot not bill for educating themselves about basic aspects of the Vaccine Program.  *See, e.g.*, *Antolick v. Sec'y of Health & Human Servs.*, No. 16-1460v, 2020 WL 524776, at *5 (Fed. Cl. Spec. Mstr. Jan. 13, 2020), citing *Helton v.*

---

members for legal work performed in their cases.  In possibly the earliest case addressing this issue, then-Chief Special Master Golkiewicz denied legal fees and costs requested by a petitioner's husband, who was a licensed attorney.  *See, e.g.*, *Kooi v. Sec'y of Health & Human Servs.*, No. 5-438v, 2007 WL 5161800 (citing *Kay v. Erhler*, 499 U.S. 432 (1991).  The chief special master noted that the Vaccine Act only awards costs that have been "incurred".  *Kooi*, 2007 WL 5161800 at *4, citing 42 U.S.C. §§ 300aa-15(e)(1).  "Although [then-Chief Special Master Golkiewicz] [was] not aware of any prohibition against an attorney-spouse acting on behalf of a spouse, the relationship to be categorized as an attorney-client relationship for purposes of 'incurred' costs must be evidenced by a formal, established relationship."  *Kooi*, 2007 WL 5161800 at *4.  In *Koii*, there was a lack of evidence that the attorney had an attorney-client relationship with his wife.  There was not a formal representation agreement, he was not admitted to practice before the Court of Federal Claims, he never entered an appearance in the case, and the wife had an attorney of record with much experience in the Vaccine Program.  *Id.* at *4-5. In contrast, the present case contains greater evidence of an attorney-client relationship and an incurred legal obligation to the petitioner.  Mr. Doherty's admission to practice before this Court does not carry significant weight, because that stemmed from his earlier representation of Massachusetts General Hospital over a decade earlier.  *See supra* note 6.  However, Mr. Doherty filed a motion to substitute counsel in which he avers: "The petitioner, Katherine Doherty has asked that I represent her in this matter and that I be appointed as Counsel of record for all further matters relating to this case."  Pet. Motion (ECF No. 18) at Attachment 2.  Mr. Doherty subsequently became the attorney of record and all filings have been served on him on behalf of petitioner.  Also of note, Mr. Doherty's experience with complex personal injury, medical malpractice, and products liability matters makes him more qualified than many other attorneys to take on a case in the Vaccine Program.  For these reasons as well as respondent's lack of objection on this subject, I find it appropriate to award attorneys' fees and costs to a petitioner's family member in this rare instance.

*Sec'y of Health & Human Servs.*, No. 16-234V, 2017 WL 4020452, at *5) (Fed. Cl. Spec. Mstr. Aug. 28, 2017); *see also Goldie v. Sec'y of Health & Human Servs.*, No. 18-1476V, 2019 WL 7496619, at *4 (Fed. Cl. Spec. Mstr. Dec. 6, 2019) (providing additional case law). In this case, counsel billed for general research at least twice. On May 11, 2016, he billed 1.8 hours for "legal research on-line concerning procedural rules for the Vaccine Court". Int. Fee App., Attachment 3 at 1. On September 17, 2016, he billed 1.7 hours for "Legal research: Read and analyzed decision in *Althen* and other decisions concerning vaccine claims (*Stevens, Grant, Knudsen, Lampe*)". Int. Fee App., Attachment 3 at 3. An attorney may well need to learn the procedural rules and understand the case law governing all causation-in-fact claims upon entering the Vaccine Program, but it is not appropriate to bill that research to his first case. **This results in a deduction of $1,435.00 from the fee request.**

Additionally, attorneys often delegate appropriate tasks to paralegals. An attorney may be compensated for paralegal-type work, but only at a paralegal rate. *See, e.g., Doe/11 v. v. Sec'y of Health & Human Servs.*, No. XX-XXV, 2010 WL 59425, at *9-10 (Fed. Cl. Spec. Mstr. Jan. 29, 2010) (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 (1989)); *Mostovoy v. Sec'y of Health & Human Servs.*, No. 02-10V, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016); *Riggins v. Sec'y of Health & Human Servs.*, No. 99-382V, 2009 WL 3319818, at *20-21 (Fed. Cl. Spec. Mstr. June 15, 2009); *Turpin v. Sec'y of Health & Human Servs.*, No. 99-535v, 20008 WL 747914, at *5-7 (Dec. 23, 2008).

The interim fee application provides that counsel billed a significant number of hours for what is appropriately categorized as paralegal tasks. For example, *after* reviewing and analyzing medical records designated as Petitioner's Exhibits 1-15 (which I accept as an appropriate attorney task), on July 11, 2016, counsel billed 3.0 hours to "prepare and file" those medical records at his attorney rate of $410/ hour, for a total of $1,230. Int. Fee App. at 1.

Similarly, after counsel reviewed and analyzed medical records designated as Petitioner's Exhibits 16-22, on October 28, 2016, counsel billed 1.8 hours to "review, organize, scan, and file" those records at his attorney rate for a total of $738. *Id.* at 4.

The same goes for billing entries concerning petitioner's experts. For example, after counsel established communication with Dr. Steinman and finalized a detailed summary of petitioner's medical history, on July 2, 2017, counsel billed 1.3 hours to "organize, scan, and email" the materials to him. *Id.* at 7. This would be an appropriate task to bill at a paralegal rate.

Similarly, after Dr. Steinman sent his cited medical literature with the relevant sections highlighted and counsel read those articles, on February 15, 2018, counsel billed 3.5 hours to "continue to review, organize, format, and attempt to file" those articles. *Id.* at 11.

There are other paralegal-type tasks billed at the attorney rate throughout the interim fee request. *See also id.* at 2, 10, 13, 16, 17, 18, 20, 21, 22, 23, 24. All told, these entries total approximately 17.5 hours which should not be compensated at the attorney rate ranging from $410 - $425, but at the paralegal rate of $125. **This results in a deduction of $5,955.00 from the fee request.**

**D.  Costs**

Like attorneys' fees, costs incurred - by counsel or petitioners themselves - must be reasonable to be reimbursed by the Program.  *Perreira*, 27 Fed. Cl. 29, 34.  Petitioner requests interim costs totaling $34,120.00.  This includes $1,360.95 for filing the petition, obtaining medical records, and obtaining filings from the case docket, which are adequately documented and reasonable.  Int. Fee App., Attachment 3 at 27-59.

The interim request also includes an invoice from petitioner's treating ophthalmologist since 2008, Dr. Halsey Settle, who wrote a report containing a helpful summary of her petitioner's extensive medical history.  Dr. Settle also opines that petitioner's pre-vaccination and post-vaccination ophthalmological problems are separate and represent different mechanisms of damage.  Pet. Ex. 71.  Dr. Settle requests $450 per hour for 18.6 hours expended on his report and consultation with petitioner's counsel, for a total of $8,370.00.  Int. Fee App., Attachment 5 at 3-4.  Dr. Settle is well-qualified to opine on the limited issues addressed in his report.  I find it reasonable to award his invoice without adjustment.

The remainder of the interim request is from petitioner's expert Dr. Steinman.  He requests an hourly rate of $500.00 for 51.5 hours, for a total invoice of $25,750.00 in association with his two reports filed in this case.  *See* Int. Fee App., Attachment 4 at 3-4; Pet. Exs. 23, 102.  I and other special masters have repeatedly found this rate for Dr. Steinman to be reasonable.  However, there is cause to find that Dr. Steinman's billed hours billed on this case are excessive.  Specifically, in Dr. Steinman's first report, he opined that retinal inflammatory disease can be caused by both Tdap and MMR vaccinations.  Approximately half of his first report is devoted to the mechanism of molecular mimicry, his own BLAST searches of the viral strains contained in MMR vaccine, and whether there can be molecular mimicry between those strains and myelin basic protein.  Pet. Ex. 23 at 14-27.  He also provided considerable medical literature on these subjects.

Dr. Steinman states that petitioner received both Tdap and MMR vaccine in June 2012.  Pet. Ex. 23 at 1.  He cites to a hospital record which provides that Tdap was ordered "prior to discharge for non-immune patients only."  Pet. Ex. 25 at 2.  However, the original petition (filed *pro se*) only alleges injury from Tdap vaccine.  *See generally* Petition.  After Dr. Steinman's first report was filed, respondent requested medical records establishing not just the order, but *administration* of Tdap vaccine.  Resp. Motion to Amend Schedule (ECF No. 72) at 2.  Petitioner subsequently filed an affidavit averring that she was unable to locate any record to confirm that she received an MMR vaccination and that she did not recall receiving any vaccination, other than Tdap, in June 2012.  Pet. Ex. 75.  Afterwards, Dr. Steinman had to prepare a supplemental expert report limiting his opinion to the Tdap vaccination.  Pet. Ex. 102.  Petitioner's counsel also filed a motion to strike medical literature cited in Dr. Steinman's first report pertaining to MMR vaccination.  Pet. Motion to Strike (ECF No. 101).  Because Dr. Steinman's opinion regarding MMR vaccination was inapplicable to this case, I do not find it reasonable to award the associated costs.  **I find that rough justice is accomplished by deducting one-third of Dr. Steinman's invoice.  This results in a deduction of $8,583.33 from the interim fee request.**

## IV.  Conclusion

In accordance with the foregoing, petitioner's motion for *interim* attorneys' fees and costs is **GRANTED**.  Interim attorneys' fees and costs are awarded as follows:

| | |
|---|---|
| Attorneys' Fees Requested | $99,147.50 |
| (Non-Compensable Legal Research) | - $1,435.00 |
| (Adjustment for Paralegal Tasks) | - $5,955.00 |
| **Attorneys' Fees Awarded** | **$91,757.50** |
| | |
| Attorneys' Costs Requested | $34,120.00 |
| (Reduction to Dr. Steinman's Costs) | - $8,583.33 |
| **Attorneys' Fees Awarded** | **$25,536.67** |
| | |
| **Attorneys' Fees and Costs Awarded** | **$117,294.17** |

Accordingly, the following is awarded:

1) **A lump sum in the amount of $117,294.17 representing reimbursement for** *interim* **attorneys' fees and costs, in the form of a check payable jointly to petitioner and her attorney Joseph L. Doherty, Jr.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court is directed to enter judgment forthwith.[9]

IT IS SO ORDERED.

**s/Thomas L. Gowen**
Thomas L. Gowen
Special Master

---

[9] Entry of judgment is expedited by each party's filing notice renouncing the right to seek review.  Vaccine Rule 11(a).